UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NICOLE R. GRASSI
individually and on behalf of all
others similarly situated,                                **CLASS ACTION**

    Plaintiff,                                                                                  **JURY TRIAL DEMANDED**

v.

PUBLIC STORAGE, a Maryland
Real Estate Investment Trust,

    Defendant.
_____/

**CLASS ACTION COMPLAINT**

Plaintiff, Nicole R. Grassi, brings this class action against Defendant, Public Storage, a Maryland Real Estate Investment Trust, and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action under the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA").

2. Plaintiff seeks to put an end to Defendant's conduct of willfully, knowingly, and/or recklessly disclosing the personal and confidential financial information of thousands of consumers throughout the country.

3. Defendant is the largest self-storage company in the United States. Based on number of tenants, Defendant is one of the largest landlords in the world, operating more than 154 million rentable square feet of real estate. Defendant generates $2.5 billion in annual revenues through

its 2,593 locations around the country.

4. Despite its size and sophistication, Defendant routinely violates FACTA – a federal privacy statute that unambiguously states: "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction" 15 U.S.C. § 1681c(g)(1) – by willfully, knowingly, and/or recklessly issuing electronically printed receipts to its customers for payment card transactions that include the expiration date of consumers' credit and debit cards.

5. Defendant's willful, knowing, and/or reckless conduct has damaged Plaintiff and members of the putative class by invading their privacy, and by exposing them to a heightened risk of identity theft and payment card fraud.

6. Plaintiff hereby seeks redress for herself and all others who have been injured by Defendant's conduct including, but not limited to, injunctive relief, statutory damages, costs, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper pursuant to 15 U.S.C. § 1681p.

8. Defendant's tortious conduct occurred within the State of Florida, subjecting Defendant to jurisdiction in the State of Florida. Further, this Court has personal jurisdiction over Defendant because it continuously and systematically operates, conducts, engages in, and carries on business in Florida. Defendant purposefully avails itself of Florida's consumer market through the advertisement, promotion, and rental of its self-storage space in Florida. Pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, this Court has personal jurisdiction over Defendant.

9. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

10. Plaintiff, Nicole R. Grassi, is a natural person who, at all times relevant to this action, was a resident of Palm Beach County, Florida.

11. Defendant, Public Storage, is a publicly traded Maryland Real Estate Investment Trust, with its principal place of business at 351 West Camden Street, Baltimore, MD 21201. It conducts business regularly throughout the United States, including the state of Florida.

## THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT

12. In 2003, Congress enacted FACTA to "restrict the amount of information available to identity thieves." 149 Cong. Rec. 26,891 (2003) (statement of Sen. Shelby).

13. In enacting FACTA, Congress sought to address a very real harm to consumers. Per the Federal Trade Commission's 2015 Consumer Sentinel Network Data Book, Florida ranks No. 3 in the country for identity theft, with a total of 44,063 complaints. Also, eight of the top 20 metro areas for identity theft are in Florida.[1]

14. So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, have jointly created a free website in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

15. In pertinent part, FACTA provides that "no person that accepts credit cards or debit

---

[1] *Consumer Sentinel Network Data Book for January-December 2015*, Federal Trade Commission (February 2016), https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2015/160229csn-2015databook.pdf.

cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the card-holder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1).

16. FACTA does not define the term "receipt" and, together with the use of the word "any," and the principal goal of protecting consumers, demonstrates Congress' intent for the broad application of the term "receipt." Indeed, FACTA is remedial in nature and must be construed broadly. *See Travelers Prop. Cas. Co. of Am. v. Kan. City Landsmen, L.L.C.*, 592 Fed. Appx. 876 (11th Cir. 2015).

17. Courts analyzing the term "receipt" have turned to Black's Law dictionary, which defines the word broadly as any "written acknowledgment that something has been received." *Black's Law Dictionary* (10th ed. 2014).

18. Similarly, the term "transaction" is not defined under the statute. Black's Law Dictionary defines a transaction as "[t]he act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract." *Black's Law Dictionary* (10th ed. 2014).

19. After it was enacted, FACTA provided three (3) years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006, a requirement that was widely publicized among retailers and by the FTC.

20. Shortly after enactment, all three major card issuing organizations, Visa, Mastercard, and American Express, issued new contractual compliance requirements in advance of FACTA's mandatory compliance date.

21. For example, the August 12, 2006 edition of "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the

expiration date should not appear at all." Visa required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

22.  Due to the failure by a handful of large retailers to timely comply with the requirements of FACTA, Congress passed a law absolving all *past* violations of FACTA.  *See* The Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 (2008). The Clarification Act did not substantively amend FACTA, but simply provided amnesty for past violators up to June 3, 2008.

23.  Since the enactment of FACTA, card processing companies have continued to alert merchants, including Defendant, of FACTA's requirements.  For example, the 2010 Visa Best Practice Alert stated:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)
>
> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

24.  Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All

5

>   preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

25. American Express has a similar requirement:

>   Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

26. The idea behind FACTA's requirements is simple:

>   should the cardholder happen to lose the receipt of a transaction, the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information and thus be able to make purchases that the seller will think were made by the legitimate cardholder.

*Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014)

27. A card's expiration date is particularly significant because "[e]ven if the identity thief has all 16 digits, without the expiration date he may be unable to use the card." *Id*. Further, it is "common in telephone and internet transactions for the consumer to be asked for an expiration date, and most systems will not allow the would-be customer to keep guessing at the date, as the guessing suggests that he may be an identity thief." *Id*.

28. Other significant reasons for requiring the deletion of expiration dates include:

>   "expiration dates combined with the last four or five digits of an account number can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information. Expiration dates are solicited by criminals in many e-mail phishing scams ..., are one of the personal confidential financial information items trafficked in by criminals ..., are described by Visa as a special security feature ..., [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card."

Id. at 626-27 (quoting Don Coker, "Credit Card Expiration Dates and FACTA," *HGExperts.com*,

www.hgexperts.com/article.asp?id=6665).

29.     FACTA incorporates the FCRA statutory damages provision, which allows a consumer to recover damages between $100 and $ 1,000 for each willful violation. *See* 15 U.S.C. § 1681n.

30.     "[I]n enacting the FACTA, Congress created a substantive right for consumers to have their personal credit card information truncated on printed receipts…" *Guarisma v. Microsoft Corp.*, No. 15-24326-CIV-ALTONAGA, 2016 U.S. Dist. LEXIS 97729, at *10 (S.D. Fla. July 26, 2016); *see also Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014) ("By enacting 15 U.S.C. § 1681c(g)(1), Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number. Appellants contend that Sam's Club invaded this right. . . . Thus, we conclude that appellants have alleged an injury-in-fact sufficient to confer Article III standing."); *Flaum v. Doctor's Assocs.*, No. 16-61198-CIV, 2016 U.S. Dist. LEXIS 169130 (S.D. Fla. Aug. 29, 2016) ("FACTA created a substantive legal right for [plaintiff] and other consumers to receive printed receipts that do not disclose 'more than the last 5 digits of the card number,'…and [plaintiff] personally suffered a concrete harm in receiving a receipt that violated the statute…"); *Altman v. White House Black Market, Inc.*, Case No. 1:15-cv-02451-SCJ, 2016 U.S. Dist. LEXIS 92761 (N.D. Ga. Jul. 13, 2016) (finding Congress, in enacting the FACTA, created a substantive right to receive a truncated credit card receipt, the invasion of which constitutes a concrete injury); *Amason v. Kangaroo Exp.*, No. 7:09-CV-2117-RDP, 2013 U.S. Dist. LEXIS 32980, 2013 WL 987935, at *4 (N.D. Ala. Mar. 11, 2013) ("[T]he statutory provisions invoked by Plaintiffs, 15 U.S.C. §§ 1681c(g) and 1681n, create a substantive right to have one's financial information protected through truncation and also provide a procedural right to enforce that truncation.").

**FACTS**

31. On May 10, 2015, Plaintiff entered into a Lease Agreement with Defendant for the rental of a self-storage unit at the following location: 23309 Lake Worth Road, Lake Worth, FL 33461.

32. On January 8, 2017, Plaintiff visited the above referenced location for the purpose of paying her monthly rental payment and authorizing future automatic payments.

33. Plaintiff provided Defendant with her Visa debit card and the amount of $46.01 was charged to Plaintiff's bank account.

34. As evidence of the payment, Plaintiff was provided with an electronically printed paper receipt bearing Defendant's name and logo, the amount of the transaction ($46.01), the type of credit card (Visa), Plaintiff's full name, the date of the transaction (1/8/17), a line for Plaintiff's signature, and *the entire expiration date* of Plaintiff's Visa debit card.

35. Notably, the debit card account number on the receipt provided to Plaintiff was truncated as required by FACTA.

36. Upon information and belief, Plaintiff was not provided any other document or acknowledgment at the time of this transaction.

37. Upon information and belief, similar violations have taken place at thousands of Defendant's locations around the country.

38. Upon information and belief, at all times relevant, Defendant was aware of its obligations under FACTA. Not only was Defendant aware that it could not print the expiration date of a card, but it was contractually prohibited from doing so by every major credit card company. Defendant accepts credit card from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

39. In fact, as demonstrated by its Annual Report Pursuant to Section 13 or 15(d)

of the Securities Exchange Act of 1934, for the 2016 fiscal year, Defendant had actual knowledge of its obligations to keep sensitive consumer information secure:

> the nature of our business involves the receipt and retention of personal information about our customers….In addition, our customers could lose confidence in our ability to protect their personal information, which could cause them to discontinue leasing our self-storage facilities.

40. Further, Defendant's CEO, Ronald L. Havner,[2] until January 28, 2009, was contemporaneously the Director of UnionBanCal. UnionBanCal's 10-K Form Annual Report contains the following language indicating clear knowledge of FACTA: "In October 2007, the federal bank regulatory agencies adopted final rules implementing the affiliate marketing provisions of the Fair and Accurate Credit Transactions Act of 2003, which amended the Fair Credit Reporting Act (FCRA)." UnionBanCal, Co., 10-K Form Annual Report (2008) (emphasis added).

41. The law is well settled that the knowledge of a corporation's directors may be imputed to the corporation. *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998); *In re Hellenic Inc.*, 252 F.3d 391, 395 (5th Cir. 2001) (noting that "courts generally agree that the knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation").

42. Accordingly, Ronald L. Havner, as director at UnionBanCal, had knowledge, or should have known of FACTA, and his knowledge can be imputed to Public Storage since Mr. Havner has been Public Storage's CEO since November 7, 2002.[3]

43. Additionally, upon information and belief, Defendant would have been alerted by its third-party payment processing company about its obligations under FACTA. Specifically,

---

[2] *See Public Storage CEO Ronald L. Havner, Jr. Assumes Additional Role of Chairman of the Board of Trustees*, PUBLIC STORAGE (August 9, 2011), https://investors.publicstorage.com/news-and-events/press-releases/press-release-details/2011/Public-Storage-CEO-Ronald-L-Havner-Jr-Assumes-Additional-Role-of-Chairman-of-the-Board-of-Trustees/default.aspx.

[3] *Id.*

9

in 2010, many payment processors sent email alerts directly to all merchants regarding FACTA's truncation requirement.

44. More so than most companies, Defendant is held to higher standards to prevent identity theft. In April 2013, the Securities and Exchange Commission (SEC) adopted joint rules with the Commodity Futures Trading Commission (CFTC) that require certain entities regulated by the SEC and CFTC to adopt programs to prevent identity theft. Defendant is registered with the SEC and subject to its regulations. The so-called "Red Flags Rule" requiring the aforementioned institutions to establish reasonable policies and procedures for the implementation of the Commissions' guidelines became effective May 20, 2013, and compliance was required by November 20, 2013.

45. Further, upon information and belief, most of Defendants' business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the redaction and truncation requirement. Defendant could have readily done the same, but failed to do so.

46. At all times relevant, Defendant was acting by and through its agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

47. The conduct of Defendant, as well as that of its agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of Plaintiff.

48. The expiration date appearing on Plaintiff's receipt was not printed accidentally; the equipment and software used to print the receipt must be programmed to display certain information, and likewise, programmed not to display certain information.

49. Notwithstanding the fact that it has had years to comply, Defendant continues to

issue point of sale receipts, which contain the expiration date of the credit or debit card, in direct violation of FACTA.

50. Defendant continues to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which do not comply with the FCRA.

51. Upon information and belief, at the time Defendant printed the subject receipt, Defendant knew it was violating FACTA by providing Plaintiff a receipt that contained Plaintiff's debit card expiration date.

52. Defendant willfully, knowingly, and/or recklessly violated Plaintiff's substantive rights under FACTA.

53. Defendant's willful, knowing, and/or reckless conduct also unnecessarily exposed Plaintiff to an unusually elevated risk of identity theft and credit card/debit card fraud. Plaintiff did not initially realize that Defendant had unlawfully printed the expiration date of her debit card on the receipt. Consequently, Plaintiff left the receipt in an open place where it may have been viewed by one or more identity thieves. The uncertainty of whether her private information may have been viewed by one or more identity thieves has caused Plaintiff aggravation and stress.

## CLASS ALLEGATIONS

### PROPOSED CLASS

54. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

55. Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who (1) used a credit or debit card; (2) for a transaction at one of Defendant's self-storage locations; and (3) were provided a point of sale receipt that displayed more than the last 5 digits of the card's account number and/or the expiration date of the**

>card; (4) during the two years prior to the filing of this Complaint through the date of the order on certification.

56. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

57. Upon information and belief, the members of the Class are believed to be so numerous that joinder of all members is impracticable.

58. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### COMMON QUESTIONS OF LAW AND FACT

59. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

>(1) Whether Defendant provided electronically printed point-of-sale receipts containing the expiration date and/or more than the last 5 digits of the card number;
>
>(2) Whether Defendant's conduct violated FACTA;
>
>(3) Whether Defendant's conduct was knowing, willful, and/or reckless;
>
>(4) Whether Defendant's conduct created a risk of violating FACTA that was willful, known, or so obvious that it should have been known; and
>
>(5) Whether Plaintiff and members of the class are entitled to statutory damages.

60. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely prints receipts that contain payment card expiration dates is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

61. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

62. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

63. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

64. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of 15 U.S.C. § 1681c(g)(1)**
**(On Behalf of Plaintiff and the Class)**

31. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

32. 15 U.S.C. §1681c(g) states as follows:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

33. This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

34. Defendant employs the use of said Devices for point of sale transactions at thousands of locations nationwide.

35. On or before the date on which this Complaint was filed, Plaintiff and members of the class were provided receipts by Defendant that failed to comply with the requirements of FACTA.

36. At all times relevant to this action, Defendant was aware, or should have been aware, that it was obligated to fully redact the expiration date of Plaintiff's debit card.

37. Notwithstanding the three-year period to comply with FACTA and its accompanying provisions, nor the subsequent years since FACTA became effective; and having knowledge of FACTA as a whole; Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to violate FACTA.

38. By printing the expiration date of Plaintiff's debit card number, Defendant caused Plaintiff to suffer a heightened risk of identity theft, especially as the receipt has the full name of the card holder on the it together with other sensitive information; exposed Plaintiff's private information to those of Defendant's employees who handled the receipt; and forced Plaintiff to take action to secure or destroy the receipts.

39. As a result of Defendant's willful, intentional, and/or reckless violations, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft.

40. Defendant is liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff, Nicole R. Grassi, on behalf of herself and the other members of the Class, pray for the following relief:

    a. An Order granting certification of the Class;

    b. Statutory damages;

    c. Punitive damages;

    d. Injunctive relief;

    e. Attorneys' fees, litigation expenses and costs of suit; and

    f. Such other and further relief as the Court deems proper under the circumstances

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Date: April 14, 2017

       Respectfully submitted,

       **HIRALDO P.A.**

       */s/ Manuel S. Hiraldo*
       Manuel S. Hiraldo
       Florida Bar No. 030380
       401 E. Las Olas Boulevard
       Suite 1400
       Ft. Lauderdale, Florida 33301
       Email: mhiraldo@hiraldolaw.com
       Telephone: 954.400.4713

       and

       **SHAMIS & GENTILE, P.A.**

       */s/ Andrew J. Shamis*
       Andrew J. Shamis
       Florida Bar No. 101754
       *efilings@shamisgentile.com*
       14 NE 1st Avenue, Suite 400
       Miami, Florida  33132
       (t) (305) 479-2299
       (f) (786) 623-0915

       *Counsel for Plaintiff*